IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI-DADE DIVISION
Case No.: 1:25-cv-21959

ANDREI ALEXANDRU CELEA,

          Plaintiff,

v.

EQUIFAX INFORMATION SERVICES, LLC, TRANS UNION LLC, and JPMORGAN CHASE BANK, N.A.;

          Defendants.

## COMPLAINT

Plaintiff Andrei Alexandru Celea ("Plaintiff"), by and through the undersigned counsel, brings this action on an individual basis, against Equifax Information Services, LLC ("Equifax"); Trans Union LLC ("Trans Union") (collectively, the "CRA Defendants"); and JPMorgan Chase Bank, N.A. ("Chase"); and states as follows:

## INTRODUCTION

1. This is an action to recover damages for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA")

2. As alleged in detail below, Defendants reported a derogatory business credit card account on Plaintiff's credit report that did not belong to Plaintiff. Defendants than failed to conduct a reasonable investigation in response to Plaintiff's disputes and failed to correct the reporting.

3. Accordingly, Plaintiff is entitled to damages.

## PARTIES

4. Plaintiff resides in Bay Harbor Islands, Florida, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

5. Defendant Equifax is a limited liability company with a principal place of business located at 1550 Peachtree Street, N.W., Atlanta, Georgia 30309, and is authorized to do business in the State of Florida, including within this District.

6. Equifax is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Equifax is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

7. Defendant Trans Union is a limited liability company with a principal place of business located at 2 Baldwin Place, Chester, PA 19022, and is authorized to do business in the State of Florida, including within this District.

8. Trans Union is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Trans Union is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

9. Defendant Chase is a national banking association that operates as a private bank with its headquarters in 1111 Polaris Parkway, Columbus, Ohio 43240

10. JPMCB qualifies as "furnisher" of consumer information under the FCRA.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p (allowing FCRA claims to be brought in any "court of competent jurisdiction").

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTS

### The Inaccurate Reporting

13. From November 2020 until September 2024, Plaintiff was employed by Propolis Management LLC, ("Propolis").

14. In August 2024, Propolis issued to Plaintiff a Chase business credit to pay for various company expenses.

15. Propolis was holder of the Chase card and was responsible for all payments.

16. By contrast, Plaintiff was neither the holder of the Chase card, nor was he responsible for any payments.

17. Thus, Plaintiff reasonably believed that the account would be opened strictly as a corporate credit line and would not impact his personal credit.

18. Plaintiff resigned from Propolis, effective September 1, 2024, and returned the company credit card to Propolis management.

19. At the time of his resignation, Plaintiff reasonably believed that the Chase credit card issued in his name would no longer be used by the company and would be deactivated promptly by his former employer.

20. In or around December 2024, Plaintiff observed a significant and unexpected drop in his credit score, which had previously remained consistently above 800.

21. Concerned by the sudden decline, Plaintiff promptly accessed and reviewed his consumer credit reports to determine the cause.

22. Upon review, Plaintiff discovered that (i) the Propolis business card was erroneously reported as an "individual" account on his personal credit report; and (ii) Defendants had reported a 60-day delinquency on the Propolis account.

23. Plaintiff was shocked to learn that the JPMorgan Chase credit card, which was intended solely for corporate use, had been reported as a delinquent personal account, causing significant damage to his credit profile.

24. Plaintiff promptly contacted his Propolis to discuss the matter. Propolis management confirmed that Plaintiff was not responsible for the account and that derogatory notations, if any, should not have been reported on Plaintiff's personal credit report.

25. Propolis was eager to help correct the error. To that end, on January 7, 2025, Propolis issued a notarized affidavit affirming that the account was issued solely for business use, that Plaintiff was never personally liable, that the outstanding balance had been paid in full, and that the account had since been closed.

**Plaintiff's Correspondence with and Disputes to Defendant Chase Bank**

26. By letter dated January 7, 2025, Plaintiff notified Chase about the reporting error and demanded the immediate removal of the Propolis account from his personal credit report. Plaintiff emphasized that the reporting of this account constituted an unauthorized and potentially fraudulent use of his personal information, demanded a full investigation, and insisted on a written response confirming the account's removal within ten business days. Plaintiff also enclosed the affidavit provided by Propolis.

27. By form letter dated January 16, 2025, Chase acknowledged Plaintiff's letter, stated that account information is reported monthly and encouraged Plaintiff to review his credit reports for updates.

28. Chase's generic response did not substantively address Plaintiff's concerns.

**Plaintiff's First Dispute to Defendant Equifax (January 17, 2025)**

29. On or about January 17, 2025, Plaintiff submitted a written dispute to Defendant Equifax via USPS certified mail.

30. The dispute included a detailed dispute letter, Plaintiff's government-issued identification, proof of address, and a notarized affidavit from his former employer, PMLLC, confirming that the JPMorgan Chase account ending in 1958 was issued solely for business purposes, that Plaintiff was not personally liable, and that the balance had been paid in full.

31. In his dispute, Plaintiff also explained that the JPMorgan Chase account had been reported inaccurately on his credit file as a personal account with a 60-day delinquency, despite clear evidence that the obligation belonged to his former employer and was never intended to appear on his consumer credit report.

32. Upon information and belief, Defendant Equifax received Plaintiff's January 2025 dispute.

33. By letter dated January 31, 2025, Defendant Equifax responded by issuing a reinvestigation results letter indicating that the Chase account had been "verified as accurate" and would remain on Plaintiff's credit file.

34. Defendant Equifax's response failed to meaningfully acknowledge or address the notarized affidavit and supporting documentation provided by Plaintiff.

35. Defendant Equifax continued to report the account as a personal obligation with derogatory payment history, without reclassifying or deleting the account, and merely labeled it as "disputed by consumer."

36. Upon information and belief, Equifax failed to adequately review the material submitted by Plaintiff and instead relied solely on data previously furnished by Chase.

37. As a result, Equifax failed to conduct a reasonable reinvestigation of Plaintiff's January 2025 dispute, in violation of 15 U.S.C. § 1681i.

### Plaintiff's Disputes to Defendant Trans Union

38. On or about January 17, 2025, Plaintiff submitted a written dispute to Defendant Trans Union via USPS certified mail.

39. The dispute included Plaintiff's dispute letter, proof of identity and address, and the notarized affidavit from PMLLC confirming that the disputed JPMorgan Chase account was a business obligation for which Plaintiff was not personally liable.

40. Upon information and belief, Defendant Trans Union received Plaintiff's January 2025 dispute on or about January 25, 2025.

41. On or about January 25, 2025, Defendant Trans Union issued a written response refusing to process Plaintiff's dispute.

42. In its response, Defendant Trans Union stated that it would not investigate the disputed information because the dispute was purportedly submitted by an "unauthorized third party," despite being accompanied by valid identification and supporting documentation.

43. Despite receiving documentation directly contradicting the nature and ownership of the account, Defendant Trans Union failed to remove the account or correct the inaccurate classification of the account as a personal consumer obligation.

44. Upon information and belief, Defendant Trans Union failed to conduct a reasonable reinvestigation of Plaintiff's January 2025 dispute, in violation of 15 U.S.C. § 1681i.

### Defendants Violated the FCRA and Damaged Plaintiff

45. As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damages including but not limited to, the loss of his right to keep his private financial information

confidential; the loss of his right to information about who was viewing his private financial information and how his private financial information was improperly implicated in the credit applications of another; damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumer's personally identifying information and credit information, including inquiries, mixed into Plaintiff's credit file.

46. As a direct result of the inaccurate reporting and failure to correct the Chase account, Plaintiff's credit score dropped from above 800 to 582.

47. Although the balance was ultimately paid by his former employer and the account was later marked "closed," his score only partially recovered to 672.

48. Prior to this reporting, Plaintiff maintained an exceptional credit profile, with no active derogatory tradelines and only a single 30-day late payment from 2019 on a now-closed HSBC account.

49. The Chase account with a reported 60-day delinquency became the sole derogatory entry on his file and had an immediate and significant impact on his credit standing.

50. As a result of this credit damage, Plaintiff's access to new credit was directly impaired.

51. On March 8, 2025, Plaintiff applied for a Capital One credit card to consolidate approximately $27,000 in outstanding credit card debt, relying on a promotional 0% balance transfer offer.

7/14

*Andrei Alexandru Celea v.*
*Equifax Information Services, LLC, Trans Union*
*LLC, and JPMorgan Chase Bank, N.A*
Complaint

52. Based on his prior credit history, Plaintiff reasonably expected a credit limit between $20,000 and $30,000.

53. However, he was approved for only a $10,000 limit, far less than anticipated and insufficient to meet his consolidation goals.

54. This outcome not only thwarted his financial strategy but also forced him to continue carrying out high interest balances, thereby increasing his financial burden.

55. Plaintiff is a self-employed real estate investor who depends on short-term financing to acquire and renovate properties. These loans are often structured as interest-only with durations of one to two years and are priced primarily based on the borrower's personal credit profile. Because of the derogatory reporting on the Chase account, Plaintiff faced higher interest rates and more limited access to capital.

56. On March 13, 2025, Plaintiff contacted House Max USA, a lender he had previously borrowed from to inquire about a new investment loan.

57. He was informed that his credit score had fallen below their 680 thresholds, significantly impacting his eligibility and subjecting the application to additional scrutiny.

58. Although Plaintiff had repaid a prior loan from the same lender in full, that positive history was not reported, while the inaccurate Chase tradeline remained on his file.

59. This continuing credit impairment has disrupted Plaintiff's ability to grow his business, delayed investment opportunities, and caused long-term financial and professional harm.

60. Moreover, the inaccurate reporting and failure to correct the Chase account caused Plaintiff significant personal and emotional distress.

61. Plaintiff had worked for years to build and maintain an excellent credit profile, and discovering that it was being damaged by a business account, one he never authorized and which his employer later took full responsibility for, was deeply upsetting.

62. The situation was especially distressing because it resulted not from any misconduct by Plaintiff, but from misrepresentations by a bank employee and the Defendants' refusal to remedy the error despite being notified.

63. As the sole financial provider for his household, Plaintiff left his prior employment to pursue entrepreneurial ventures.

64. However, instead of focusing on growing his business, he has been forced to devote substantial time and energy to disputing the inaccurate account, collecting documentation, and corresponding with credit bureaus and furnishers.

65. This burden has interfered with his ability to manage client work, family responsibilities, and critical business opportunities, where access to credit directly impacts deal execution and financial outcomes.

66. The ongoing credit dispute has also caused Plaintiff emotional strain and psychological hardship. He has experienced heightened anxiety and frustration, which he has discussed in therapy sessions that initially addressed unrelated issues.

67. The dispute has now become a regular source of concern, particularly as it continues to disrupt his financial planning, delay his credit recovery, and limit access to housing and financing.

68. Plaintiff has described the experience as overwhelming and demoralizing, especially given that he relied on representations made in good faith and had always acted with financial responsibility.

69. At all times pertinent hereto, Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

70. At all times pertinent hereto, the conduct of Defendants, as well as that of their respective agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiff herein.

71. As a standard practice, the CRA Defendants do not conduct independent investigations in response to consumer disputes. Instead, they merely parrot the response of the credit furnisher despite numerous court decisions admonishing this practice.

72. Defendants are aware of the shortcomings of their procedures and intentionally choose not to comply with the FCRA to lower their costs. Accordingly, Defendants' violations of the FCRA were willful.

73. As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

## COUNT I
## Violation of 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy
### (Against Defendants Equifax and TransUnion)

74. Plaintiff repeats and re-alleges the foregoing allegations as if set forth in full herein.

75. Each CRA Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure "maximum possible accuracy" in the preparation of the

credit reports and credit files it published and maintained concerning Plaintiff, when it prepared consumer reports concerning Plaintiff that contained false information.

76. Each CRA Defendant sold or otherwise published such false reports to one or more third parties, damaging Plaintiff's reputation and creditworthiness.

77. Due to the separate and independent violations of the FCRA by each CRA Defendants, Plaintiff suffered actual damages including but not necessarily limited to loss of credit; loss of ability to purchase and benefit from Plaintiff's good credit rating; detriment to Plaintiff's credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including mental and emotional pain, anguish, humiliation, and other emotional harm cognizable under the FCRA.

78. Each CRA Defendant's violations were willful, rendering each CRA Defendant liable for actual and/or statutory damages, as well as punitive damages in an amount to be determined by the Court, pursuant to 15 U.S.C. § 1681n. Alternatively, these violations were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

79. Plaintiff is entitled to recover attorneys' fees and costs from the CRA Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

### COUNT II
### Violation of 15 U.S.C. § 1681i
### Failure to Perform a Reasonable Reinvestigation
### (Against Defendants Equifax and TransUnion)

80. Plaintiff repeats and re-alleges the foregoing allegations as if set forth in full herein.

81. Each CRA Defendant violated 15 U.S.C. § 1681i by failing to conduct reasonable reinvestigation(s) of Plaintiff's dispute(s) and by failing to maintain reasonable procedures to investigate Plaintiff's dispute(s).

11/14

*Andrei Alexandru Celea v.*
*Equifax Information Services, LLC, Trans Union*
*LLC, and JPMorgan Chase Bank, N.A*
Complaint

82. Due to the separate and independent violations of the FCRA by each CRA Defendants, Plaintiff suffered actual damages including but not necessarily limited to loss of credit; loss of ability to purchase and benefit from Plaintiff's good credit rating; detriment to Plaintiff's credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including mental and emotional pain, anguish, humiliation, and other emotional harm cognizable under the FCRA.

83. Each CRA Defendant's violations were willful, rendering each CRA Defendant liable for actual and/or statutory damages, as well as punitive damages in an amount to be determined by the Court, pursuant to 15 U.S.C. § 1681n.  Alternatively, these violations were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

84. Plaintiff is entitled to recover attorneys' fees and costs from the CRA Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT III
### Violations of 15 U.S.C. § 1681s-2(b)
### (Against Defendant Chase)

85. Plaintiff repeats and re-alleges the foregoing allegations as if set forth in full herein.

86. Defendant Chase violated 15 U.S.C. § 1681s-2(b) by failing to investigate Plaintiff's dispute(s), or otherwise by failing to fully and properly investigate Plaintiff's dispute(s); by failing to review all relevant information regarding the same; by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the inaccurate information relating to Plaintiff to CRAs; and by failing to cease furnishing inaccurate information relating to Plaintiff to CRAs, including but not necessarily limited to the CRA Defendants.

87. As a result of JPMCB's violations, Plaintiff suffered actual damages including but not necessarily limited to loss of credit; loss of ability to purchase and benefit from Plaintiff's good

12/14

*Andrei Alexandru Celea v.*
*Equifax Information Services, LLC, Trans Union*
*LLC, and JPMorgan Chase Bank, N.A*
Complaint

credit rating; detriment to Plaintiff's credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including mental and emotional pain, anguish, humiliation, and other emotional harm cognizable under the FCRA.

88. Defendant JPMCB's violations were willful, rendering JPMCB liable for actual and/or statutory damages, as well as punitive damages in an amount to be determined by the Court, pursuant to 15 U.S.C. § 1681n. Alternatively, these violations were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

89. Plaintiff is entitled to recover attorneys' fees and costs from Defendant JPMCB in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i. Determining that each Defendant negligently and/or willfully violated the FCRA;

ii. Awarding against each Defendant actual, statutory, and punitive damages as provided by the FCRA;

iii. Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA;

iv. Ordering each CRA Defendant to:

  a. immediately and permanently (i) delete all inaccurate information from Plaintiff's credit reports and files, and (ii) cease reporting the inaccurate information to any and all persons and entities to whom the CRA Defendants reported consumer credit information; and

      b. send updated and corrected credit report information to all persons and entities to whom the CRA Defendants reported inaccurate information about Plaintiff within the last three years; and

v. Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: April 29, 2025

By: */s/ David Pinkhasov*
David Pinkhasov, FL # 1040933
CONSUMER ATTORNEYS, PLLC
68-29 Main Street
Flushing, NY 11367
T: (718) 701-4605
F: (718) 715-1750
E: dpinkhasov@consumerattorneys.com

*Attorneys for Plaintiff*
*Andrei Alexandru Celea*

14/14

*Andrei Alexandru Celea v.*
*Equifax Information Services, LLC, Trans Union*
*LLC, and JPMorgan Chase Bank, N.A*
Complaint